## THE NEWARK COAL COMPANY

*v.*

## ALEXANDER F. SPANGLER.

Defendant, who was doing business under the name of Newark Coal Company (unincorporated), on the formation of a corporation by that name, transferred to it his business and the good will thereof, and was taken by the corporation into its employ as an officer for four years.—*Held*, that the defendant, on the dissolution of his connection with the corporation and engaging in a rival business, must not be enjoined from advertising himself as formerly connected with such corporation.

On application for preliminary injunction. Heard on bill and affidavit, and answer and affidavit.

*Mr. Adrian Riker*, for the motion.

*Mr. William J. Davis* and *Mr. Edward A. Day*, contra.

EMERY, V. C.

The bill in this case is filed by the complainant, the Newark Coal Company, which is engaged in the business of buying and selling coal in East Orange, to restrain the defendant, Alexander Frank Spangler, from using the name of the company in any manner in the conduct of a similar business, and application is now made for a preliminary injunction pending final hearing. The bill and affidavit, and the answer and affidavit disclose the following undisputed facts: The defendant, Spangler, previous to March 18th, 1892, had for several years been carrying on the coal business under the name of the Newark Coal Company (unincorporated), and at that time a company was organized under the same name. Spangler and two other persons were the incorporators and subscribers, and, on the incorporation, Spangler, by bill of sale, conveyed to the company the goods and chattels used in carrying on his business, and also

"the good will of the Newark Coal Company (unincorporated), formerly carried on by A. Frank Spangler, in the city of Newark, county of Essex, and State of New Jersey."

Spangler became president and director of the company on its organization, and continued to hold these offices until March 5th, 1896, when he ceased to be either a director or officer, but still continued to be a stockholder on the books of the company. After March 5th, 1896, Spangler commenced the coal business on his own account, locating his office near the company's office, and upon the signs at the street and on his office describes his business, "A. F. Spangler, formerly of the Newark Coal Company." He has also issued a circular letter, describing himself in this also as "formerly of the Newark Coal Company," in which he appeals for orders to the customers "who have patronized him and his company for the past eleven years," stating, among other things,

"that he originally established, owned and controlled the Newark Coal Company since April, 1885, and until he incorporated the company in March, 1892."

The circular originally issued on March 13th, 1896, described the business as "A. F. Spangler & Company, formerly the Newark Coal Company," but this circular was withdrawn and the present form, "formerly of the Newark Coal Company," adopted, and his business is now carried on in this manner, his advertisements and circulars stating his connection with the company, as "formerly of the Newark Coal Company."

The complainant alleges in this bill that the defendant is attempting to deceive customers into the belief that they are dealing with the complainant, but as this allegation is not supported by the affidavit, and is denied by the answer, which, in this respect, is also sustained by the form of the appeal in the circular, it cannot be considered as affording any basis for the preliminary injunction. The real question is whether the complainant is entitled to such injunction on the above undisputed facts.

The defendant, on the sale of the good will, having made no covenant with the company not to engage in the business, it is clear that he cannot be prevented from exercising this right to engage in the business even as a rival to the company. *Richardson* v. *Peacock, 6 Stew. Eq. 597* (*Errors and Appeals, 1881*). And if the contract of sale, which was the only contract he made with the company, does not, either by its expressed or implied obligations, restrain him, it is also clear that, in carrying on such rival business, he has the right to state his former connection with the business sold. In *Hookham* v. *Pottage, 8 Ch. App. 91, 95* (at *p. 94 note*), Vice-Chancellor Malins alludes to what he calls " the well-established rule that a man, having been in the employ of a trader of reputation, is entitled in a fair manner to say that he comes from him." Lord-Justice James, on appeal in this case (at *p. 95*), says : " I agree that defendant had a right to state that he was the Samuel Pottage formerly manager and afterwards partner in the firm of H. & P., and that he had a right to avail himself, by the statement of that fact, of the reputation which he had acquired." He has, however, no right to make statement in such a way as to represent that he was carrying on the business. This was not a case of sale of the good will by one purchaser to another, but a dissolution of the firm by decree of court, on which " the business" went to complainant, who continued it, not under the name of " H. & P.," the firm name, but under the name of " H. & Co." Defendant set up business a few doors off, as " P.," from " H. & P." In this case it was found, as matter of fact, that the manner of putting up the names was calculated to lead the public to suppose that Pottage was still connected with the old firm, and an injunction was therefore ordered. A sale of the business or trade seems to be considered a different thing from the sale of the " good will." See *14 Ch. Div. 600*. Whether, on a sale of " good will," there is an implied covenant not to use the name in any manner, was not decided in this case or any other to which I have been referred.

" Good will " is a term somewhat indefinite, and it may be impossible so to define it as to include an application to all cases.

In *Cruttwell* v. *Lye, 17 Ves. 346,* Lord Eldon said that the good will which is the subject of sale is nothing more than the probability that the old customers will resort to the old place, but Sir George Jessel, in *Ginesi* v. *Cooper & Co., 14 Ch. Div. 596, 601,* points out that this definition was one which was applicable only to the facts and situation in that case, and in the same opinion gives the following wider definition of good will, made by Vice-Chancellor Wood in *Churton* v. *Douglas* (a leading case), *5 Jur. (N. S.) 887, 890:* "It would be taking too narrow a view of what is laid down by Lord Eldon [in *Cuttrell* v. *Lye*], to say that good will is confined to that. 'Good will,' I apprehend, must mean every advantage—every positive advantage, if I may so express it—as contrasted with the negative advantage of the late partner not carrying on the business himself, that has been acquired by the old firm in carrying on its business, whether connected with the premises on which the business was previously carried on *or with the name of the late firm,* or with any other matter carrying with it the benefit of the business."

If this definition should be applied to the present case, the question is whether the right to all advantage connected with the name of the company gives, as against the vendor of the good will, the exclusive right to use the name of the firm and prevents vendor from endeavoring afterwards to acquire business by advertising that he was formerly connected with the firm or company. That such advertisement would, to some extent, detract from the value of the good will which he has sold, and that such was the intent, seems to me quite clear. But, even admitting this effect and intent, the question at issue is not solved, for if this were the whole test, then the vendor of a good will could not set up a rival business in the neighborhood at all, as this would almost necessarily affect, to some extent, the good will sold.

The vendor of a "good will" who has not expressly restricted himself against carrying on the business, being permitted by law to carry on a rival business wherever he chooses, may push his business as any stranger or outsider might, even though this does interfere with the business he has sold, and the real ques-

tion, therefore, is narrowed down to this: In thus pushing his rival business, what acts, if any, must the vendor be restrained from? As was said by Lord-Justice Cotton, in *Pearson* v. *Pearson, 27 Ch. Div. 145*, the real difficulty is to draw the line, and in this case, by reason of this difficulty, he refused to hold that direct solicitation of the old customers could be restrained, and on this point overruled *Labouchere* v. *Dawson, L. R. 13 Eq. 322*, decided by Lord Romilly and strongly approved by Sir George Jessel in *Ginesi* v. *Cooper, 14 Ch. Div. 596*. But, in a very late case, the house of lords has considered the whole subject, and in *Trego* v. *Hunt, App. Cas. 7 (1896)*, has overruled *Pearson* v. *Pearson*, and has finally settled the law in England in accordance with the doctrine in *Labouchere* v. *Dawson*, viz., that where the good will of a business is sold (without further provision), the vendor may set up a rival business, but he is not entitled to canvass the customers of the old firm, and may be restrained by injunction from soliciting any person who was a customer of the old firm prior to the sale, to continue to deal with the vendor or not to deal with the purchaser. The doctrine is put upon the ground that these acts are direct and intentional dealings with the good will sold and efforts to destroy it, in which the vendor takes advantage of the business connection of the old firm and his knowledge of that connection. *Lord Herschell, pp. 20, 21.*

In *Richardson* v. *Peacock, 6 Stew. Eq. 597*, the case of *Labouchere* v. *Dawson* was cited with approval by Mr. Justice Dixon, in delivering the opinion of the court, and I think the doctrine of that case may be taken to be so far settled in this state as to entitle the complainant in this case to an injunction against such solicitation of old customers, had the injunction been asked for this purpose. But the complainant is not now pressing, or even asking for, such injunction, but for an injunction against any use of the name whatever, even when the use of the name is merely to state the former connection of the vendor therewith. As to this particular act of the vendor, Lord-Justice Cotton, in *Pearson* v. *Pearson, supra* (at *p. 157*), says: "It is admitted that a person who has sold the good will of his business may set up a

Newark Coal Co. *v.* Spangler.

similar business next door and *say that he is the person who car-
ried on such business,* although such proceedings manifestly tend
·to prevent the old customers going to the old place." And even
Lord Herschell, in *Trego* v. *Hunt, supra* (at *p. 20*), quoting this
passage, does not controvert this statement of a vendor's rights.
There are, however, no cases cited upon the question, and not-
withstanding these intimations of opinion by these distinguished
judges, *arguendo,* it now strikes me that this act of the vendor
appealing to the public for custom, on the ground of this former
connection with the company, comes within the principle estab-
lished by *Trego* v. *Hunt,* and if this were the only question in
the case, should be enjoined as a direct and intentional interfer-
ence with the very thing sold in the good will.   The purchaser
was entitled to the name, and, as Vice-Chancellor Wood says,
in *Chuston* v. *Douglas, supra,* to every advantage connected
with the same.   This would, of course, include any advantage
then accruing to the name or to the business by reason of the
vendor's previous connection with it, and to now base his appeal
to the public for business, on the ground that he was formerly
connected with the business sold, seems to be a direct attempt
to appropriate to himself part of that which he has already sold
and received pay for.   The permission to conduct a rival busi-
ness is allowed to the vendor of the good will in the interest of
the public and to prevent restraint of trade.   But in carrying
on this business, he must not, as was said by Lord Macnaughten,
in *Trego* v. *Hunt, supra* (at *pp. 24, 28*), " make his approaches
from the vantage ground of his former position, moving under
cover of a connection which is no longer his.   He may not sell
the custom and steal away the customers in that fashion." If,
therefore, the only question in this case was whether the defend-
ant, having sold the good will of his business, was now entitled
to carry on a rival business, stating his former connection with
the business sold, I should be inclined, as at present advised, to
grant the injunction.   But the difficulty with the complainant's
case is one which reached beyond this sale of the good will.
The business and good will which the defendant, Spangler, sold,
was sold in March, 1892, and was the good will of the Newark

Coal Company, and as to the business of this unincorporated company it might be held that he was under an implied obligation not to attempt to withdraw it to his new business by stating his former connection therewith.     But, after this sale of the good will, the vendee, the Newark Coal Company, the present complainant, assuming the name in which the business had been previously carried on, succeeded to the old business and has carried on its own business under the same name for four years, taking the defendant, Spangler, into its employ as an officer. Upon entering this employment of the complainant, the defendant made no contract that, on ceasing to be so employed, he should not be at liberty to state his connection with the company which had employed him.     Having been with the company as an officer for four years, he is entitled, on leaving its employ and in the absence of any contract, to state truly the fact of his connection, and in my judgment any implied obligation connected with the sale of the good will to the company originally, cannot, on any facts now appearing in the case, be extended to prevent his making a statement of his connection with the company of which he was for four years director and officer.

The injunction against the use of the name, for the purpose of stating his former connection with the complainant, must, therefore, be denied, and the fact that the use of the complainant's name for this purpose may also tend to detract from the business which had formerly belonged to the old "good will" which he had sold, cannot deprive him of the lawful use of the name.     The application here is to prevent the use of the name altogether, and if for any purpose defendant has the right to use the name, it cannot be altogether restrained.